## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | | |
|---|---|---|
| JSM AT TINGLEY, LLC, JSM AT APPLEGARTH, LLC, JSM AT BRICK, LLC, JSM AT ROUTE 70, LLC, JSM AT MARTIN BOULEVARD, LLC, WWM PROPERTIES, LLC, FULTON SQUARE URBAN RENEWAL, LLC, and COLUMBIA GROUP AT HAMILTON, LLC, | : : : : : : : : : | |
| Plaintiffs, | : : | Civil Action No. 11-448 |
| v. | : : | **OPINION** |
| FORD MOTOR COMPANY, FORD MOTOR LAND DEVELOPMENT CORPORATION, MIG/ALBERICI, LLC, ALBERICI CONSTRUCTORS, INC., EQ NORTHEAST, INC., GOLDER ASSOCIATES, INC., and ARCADIS U.S., INC. | : : : : : : : | |
| Defendants. | : : | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on motions to dismiss the claims in Plaintiffs' complaint on various grounds submitted by Defendants EQ Northeast Inc. (D.E. 47), MIG/Alberici, L.L.C. and Alberici Constructor Inc. (D.E. 48), Golder Associates, Inc. (D.E. 50), Arcadis U.S., Inc. (D.E. 51), and Ford Motor Company and Ford Motor Land Development Corporation (D.E. 52). The Court has considered the submissions made in support of and in opposition to the motions and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Ford Motor Company and Ford Motor Land Development's motion to dismiss all counts for failure to timely assert compulsory

counterclaims under Fed. R. Civ. P. 13(a)—(D.E. 52)—is granted, and all claims against Ford Motor Company and Ford Motor Land Development in this action are dismissed with prejudice. Motions by the other Defendants in this action will be denied without prejudice with leave to file supplemental briefing to address whether the other Defendants join Ford's Rule 13(a) arguments, and if so, how Rule 13(a) applies to the claims asserted against each Defendant by Plaintiffs in this case.[1]

## I.     BACKGROUND, FACTS, AND PROCEDURAL HISTORY

The Court assumes the parties' familiarity with the facts of this action, and therefore sets them forth briefly, adding more specifics throughout the Opinion where they are relevant.  In its Opinion, the Court will refer collectively to Plaintiffs as the "Related Entities," who owned and developed the "Seven Properties" allegedly harmed by the contaminated concrete that Edgewood Properties, Inc. ("Edgewood") brought to its development sites pursuant to its "Zero-Dollar Sales Agreement" with Ford.  (JSM Compl. ¶ 105).  Where the Court refers to specific Plaintiffs, it will do so as follows: JSM at Tingley, LLC ("Tingley")—owner of the Tingley Property (JSM Compl. ¶ 1); JSM at Applegarth, LLC ("Applegarth")—owner of the Applegarth Property (*id.* ¶ 2); JSM at Brick, LLC ("Brick")—owner of part of the Brick Property (*id.* ¶ 3); JSM at Route 70, LLC ("Route 70")—owner of the other part of the Brick Property (*id.* ¶ 4); JSM at Martin Boulevard, LLC ("Martin Blvd.")—owner of the Brick Mobile Home Park (*id.* ¶ 5); WWM Properties, LLC ("WWM")—owner of the West Windsor Properties (*id.* ¶ 6); Fulton Square Urban Renewal, LLC ("Fulton Square")—developer of Fulton Square Condominiums and owner of the Fulton Property (*id.* ¶ 7); and Columbia Group at Hamilton, LLC ("Columbia Group")—

---

[1] The Court notes that it is unclear from the briefs themselves whether each Defendant has joined Ford's Rule 13(a) arguments, and if so, how such arguments apply.  Therefore, the Court will not risk raising these arguments *sua sponte*.  Per its below analysis, however, the Court does consider Rule 13(a) to be a critical issue in this action, and therefore requests supplements to the parties' briefs per the accompanying Order.

owner of the American Standard Property (*id.* ¶ 8).  Where it does so, the Court will refer generally to the Defendants as "Defendants" or "Ford and its co-parties."  More often, the Court will refer to each Defendant specifically, as follows: Ford Motor Company and Ford Motor Land Development Corporation ("Ford"); MIG/Alberici, LLC ("MIG/A"); Alberici Constructors, Inc. ("ACI"); EQ Northeast, Inc. ("EQ"); Golder Associates, Inc. ("Golder"); and Arcadis U.S., Inc. ("Arcadis").

The instant action arises out of Edgewood's procurement of Recycled Concrete Aggregate ("RCA") from Ford's former automobile assembly plant in Edison, New Jersey ("Edison Plant") in 2004.  The Related Entities allege that in January, 2005 "Ford and [MIG/A] began distributing concrete with positive PCB detections pursuant to so-called 'zero-dollar sales agreements' negotiated and executed by Ford."  Under the terms of these agreements, "Ford, [MIG/A], Golder, Arcadis, and/or EQ provided third parties (including, but not limited to, Edgewood) crushed concrete at no cost."  (D.E. 1, JSM Compl. ¶ 81).  Ford hired Golder and Arcadis as consultants "responsible for environmental issues related to decommissioning the Edison Plant."  (*Id.* ¶ 33).  Ford hired MIG/A "and/or ACI to serve as the general contractor responsible for decommissioning" the Plant.  (*Id.* ¶ 34).  MIG/A, in turn, hired EQ "to assist in decommissioning the Edison Plant."  (*Id.* ¶ 15).  Then, "during April-May 2005, Ford, Golder, and/or EQ intentionally, recklessly and/or negligently misrepresented that under the anticipated 'Second Contract,' Edgewood would receive crushed concrete not exceeding the residential (or unrestricted use) criteria."  (*Id.* ¶ 139).  Subsequently, Edgewood used the concrete as backfill at the Seven Properties owned by the Related Entities, Plaintiffs in this action. The parties later determined that the concrete was contaminated.

### A.      First Amended Complaint

This case (the "JSM Action" or "the present action"), and its companion case, *Ford Motor Co. v. Edgewood Properties, Inc.*, No. 06-1278 (D.N.J.) (the "Edgewood Action"), has a long procedural history with which the Court presumes the parties are familiar; therefore, the Court sets forth only the procedural history and facts relevant to its analysis below.

Ford first filed the Edgewood Action on March 17, 2006 in the District of New Jersey. (D.E. 1 (06-1278)).  On June 9, 2008, after substantial discovery, "Plaintiff Ford Motor company ('Ford' or 'Plaintiff'), by its attorneys . . . [filed] its First Amended Complaint against Defendants Edgewood Properties, Inc. ('Edgewood')."   (D.E. 125 (11-1278), the "First Amended Complaint").  Ford sought recovery for "the necessary costs of response that Ford has or will incur . . . caused by Edgewood's discharge of crushed concrete material containing PCBs to several locations: American Standard (Hamilton Township), Fulton Square (New Brunswick), West Windsor Township Site, Tingley Rubber (South Plainfield), Applegarth (Monroe Township), Laurelton Mobile Home Park (Brick Township), and Brick 70 (Brick Township)." (*Id.* ¶ 2).  Ford alleged, "[f]or purposes of this First Amended Complaint, 'Edgewood' shall include the entities named at paragraphs 9 through 17, above."  (*See id.* ¶ 10 (Columbia Group), ¶ 11 (Tingley), ¶ 12 (Route 70), ¶ 13 (Brick), ¶ 14 (Applegarth), ¶15 (Martin Blvd.), ¶ 16 (WWM), and ¶ 17 (Fulton Square)).   Ford then alleged the following claims against "Edgewood": Count I-Contribution Under the Spill Act (¶¶ 97-105); Count II-Cost Recovery and Contribution under CERCLA (¶¶ 106-126); Count III-Breach of Contract (¶¶ 127-135); Count IV-Fraud (¶¶ 136-166); Count V-Negligence (¶¶ 167-175); and Count VI-Unjust Enrichment (¶¶ 176-183).

On July 11, 2008, Edgewood moved under Rules 12(b)(6) and 12(f) to dismiss Ford's claims.  (D.E. 152 (11-1278)).   On October 16, 2008, Judge Ackerman issued an opinion dismissing claims as follows: Count II dismissed as to all parties; Count III dismissed as to only the Related Entities based on Ford's "failure to adequately plead alter-ego liability"; Count IV dismissed as to only the Related Entities based on Ford's "failure to adequately plead alter-ego liability"; Count VI dismissed as to all parties.  (D.E. 202 (11-1278) at 36).   Judge Ackerman also held that "[a]ll other claims remain pending."   (*Id.*).   Therefore, the following claims remained as against the Related Entities: Count I-Contribution Under the Spill Act and Count V-Negligence.  (*See id.*).

On November 3, 2008, "Defendant Edgewood Properties, Inc. ('Edgewood'), by and through its attorneys, answer[ed] Plaintiff Ford Motor Company's ('Ford') First Amended Complaint."  (D.E. 204 (11-1278), the "Answer to Ford's First Amended Complaint").   Under the heading "The Parties," Edgewood and each of the Related Entities "admit[ted] that they are owned by the same individuals, but den[ied] that [each of the Related Entities] is an affiliate, subsidiary or otherwise related to Edgewood."  (*Id.* ¶ 10 (Columbia Group), ¶ 11 (Tingley), ¶ 12 (Route 70), ¶ 13 (Brick), ¶ 14 (Applegarth), ¶ 15 (Martin Blvd.), ¶ 16 (WWM), and ¶ 17 (Fulton Square).    Although Edgewood was careful about stating that "'Edgewood' shall only refer to Edgewood Properties, Inc.," each Related Entity—on its own behalf—"further denie[d] all remaining allegations related to itself in this First Amended Complaint and further state[d] that it lack[ed] sufficient information or knowledge to form a belief as to the truth of all other allegations in this First Amended Complaint, and *therefore denies them*."  (*Id.* ¶ 10 (Columbia Group), ¶ 11 (Tingley), ¶ 12 (Route 70), ¶ 13 (Brick), ¶ 14 (Applegarth), ¶ 15 (Martin Blvd.), ¶

16 (WWM), ¶ 17 (Fulton Square)) (emphasis added). The Related Entities did not assert counterclaims. (*See id.*).

### B.   Second Amended Complaint

On July 10, 2009, "Plaintiff Ford Motor Company ('Ford' or 'Plaintiff'), by its attorneys . . . [filed] its Second Amended Complaint against Edgewood Properties, Inc. ('Edgewood')." (D.E. 260 (11-1278), the "Second Amended Complaint"). As in the First Amended Complaint, Ford made clear, "[f]or purposes of this Second Amended Complaint, 'Edgewood' shall include the entities named at paragraphs 8 through 17." (*Id.* ¶ 9 (Columbia), ¶ 10 (Tingley), ¶ 11 (Route 70), ¶ 12 (Brick), ¶ 13 (Applegarth), ¶ 14 (Martin Blvd.), ¶ 15 (WWM), ¶ 16 (Fulton Square)). Ford further alleged that Edgewood, Applegarth, Brick, Route 70, Fulton Square, Martin Blvd., Columbia Group, WWM, and Tingley "all have common principals and, with the exception of W.W.M. Properties, LLC, the same principal place of business. In addition, each of these companies own and/or operates one or more of the Seven Properties, and/or had control over the movement of concrete and/or fill to and between the properties." (*Id.* ¶ 18).

On July 27, 2009, "Defendant, Edgewood Properties, Inc. ('Edgewood'), by and through its attorneys . . . file[d] its Answer to the Second Amended complaint filed by Plaintiff, Ford Motor Company ('Ford')." (D.E. 263 (11-1278), the "Answer to Ford's Second Amended Complaint"). Under the heading "The Parties," Edgewood and each of the following Related Entities "admit[ted] that they are directly or indirectly owned by one or more [sic] the same individuals, but den[ied] that [each of the Related Entities] is an affiliate, subsidiary or otherwise related to Edgewood." (*Id.* ¶ 9 (Columbia Group), ¶ 10 (Tingley), ¶ 11 (Route 70), ¶ 13 (Applegarth), ¶ 15 (WWM), ¶ 16 (Fulton Square)). On behalf of two of the Related Entities,

6

"Edgewood denie[d] that [the Related Entity] is an affiliate, subsidiary or otherwise related to Edgewood.  Edgewood and [the Related Entity] admit that [the Related Entity] owns and/or controls one of the Seven Properties."  (*Id.* ¶ 12 (Brick), ¶ 14 (Martin Blvd.).  Edgewood also "admit[ed] that Edgewood Properties, JSM at Applegarth, JSM at Brick, JSM at Route 70, Fulton Square Urban Renewal, JSM at Martin Blvd., Columbia Group, JSM at Tingley, and W.W.M. . . . have the same principal place of business."  (*Id.* ¶ 18).  Although Edgewood was careful about stating that "'Edgewood' shall only refer to Edgewood Properties, Inc.," each Related Entity—again, on its own behalf—"further denie[d] all remaining allegations relate[d] to itself in this Second Amended Complaint and further state[d] that it lack[ed] sufficient information or knowledge to form a belief as to the truth of all other allegations in this Second Amended Complaint, and *therefore denies them*."  (*Id.* ¶ 9 (Columbia Group), ¶ 10 (Tingley), ¶ 11 (Route 70), ¶ 12 (Brick), ¶ 13 (Applegarth), ¶ 14 (Martin Blvd.), ¶ 15 (WWM), ¶ 16 (Fulton Square)) (emphasis added).  The Related Entities, again, did not assert counterclaims.  (*See id.*).

### C.    Denial of Motion to Amend

On March 12, 2010, Edgewood moved to amend to add counterclaims by the Related Entities against Ford MIG/A, EQ, Golder, and Arcadis.  (D.E. 299 (11-1278) ("Edgewood Properties, Inc., together with certain entities with which it shares common ownership . . . respectfully seeks leave of this Court to file the [Proposed] Corrected First Consolidated Amended Counterclaims, Cross-Claims, First Amended Third-party Complaint, First Amended Complaint and Demand for Jury Trial.")).  On September 21, 2010, Judge Salas denied the motion.  (D.E. 359 (11-1728)).  At oral argument on the same day, counsel for Edgewood and the Related Entities argued:

> Those entities, we call them the entities with which Edgewood shares common ownership, *had been named as parties by Ford when Ford filed its second*

> *amended complaint in July of 2009.*  By virtue of the March 2010 version of our amended complaint, those entities have now come forward and said, we have claims, we are the owners of the properties on which the—to which the contaminated concrete was delivered, we have suffered injury, we want to assert these claims.

(D.E. 359 (11-1728) at 26) (emphasis added).  Judge Salas denied the motion, holding that adding these claims by the Related Entities and making them counterclaim plaintiffs at a late stage in the litigation "would cause undue delay and prejudice to the opposing parties."  (*Id.* at 80).

On April 27, 2011, Judge Martini affirmed the decision, "denying Edgewood's motion for leave to file an amended complaint asserting claims on behalf of the '[Related] Entities' as additional third-party plaintiffs."  (D.E. 486 (11-1278) at 1).  Judge Martini noted that the heart of the decision "is Edgewood's lack of explanation for why it spent the first four years of this litigation as the sole Third-Party plaintiff, knowing full well at least of the presence of the [Related] Entities, only to attempt to add them *as third-party plaintiffs* just as fact discovery is ending."  (*Id.* at 8) (emphasis added).[2]  Regarding the Rule 13(a) ramifications of the decision, Judge Martini noted, "Edgewood argues on appeal that if the [Related] Entities are already considered parties in this lawsuit, their claims may be considered compulsory counterclaims that should be allowable under Rule 13."  (*Id.* at 12).  In affirming the decision, Judge Martini found that "while any argument as to whether, or when, the [Related] Entities were added as parties may go to whether or not the [Related] Entities' claims are compulsory counterclaims, it does not go to showing clear error on the part of Judge Salas in ruling that these third-party plaintiff claims could not be added at this point."  (*Id.* at 13).

---

[2] As the Court notes at length in Part III.B below, the Related Entities were already defendants in the Edgewood Action when they sought to rebrand themselves as third party plaintiffs to assert long overdue claims.

### D.        The Filing of This Action

In response to the denial of their motion to amend, the Related Entities filed this separate action on January 25, 2011, asserting the claims against Ford and its co-parties that were denied by Judges Salas and Martini for undue delay.  (D.E. 1 (11-448)).   These claims—the ones at issue for purposes of this motion to dismiss—are as follows: Count I (Breach of Contract) Against Ford and Ford Land (¶¶ 182-190); Count II (Unjust Enrichment) Against Ford and Ford Land (¶¶ 191-198); Count III (Breach of Contract) Against Ford, Ford Land, and EQ (¶¶ 199-208); Count IV (Fraud in the Inducement) Against Ford and Ford Land (¶¶ 209-244); Count V (New Jersey Consumer Fraud Act) Against Ford, Ford Land, and Golder (¶¶ 245-263); Count VI (CERCLA Cost Recovery) Against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 264-274); Count VII (New Jersey Spill Act) Against MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 275-286); Count VIII (Negligent Misrepresentation) Against Ford, Ford Land, EQ, and Golder (¶¶ 287-306); Count IX (Negligence) Against Ford, Ford Land, MIG/A, ACI, EQ, Golder and Arcadis (¶¶ 307-310); Count X (Civil Conspiracy) Against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 311-318); Count XI (NJ RICO) Against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 319-382).

On May 18, 2011, each of the Defendants in the present action moved separately to dismiss the claims against them on numerous grounds. [3]  Some Defendants joined the arguments

---

[3]  Because the Court considers Rule 13(a) to be of critical importance in the present case, the Court, in its accompanying Order, requests that MIG/A, EQ, Golder, and Arcadis supplement their briefs explaining whether they explicitly join in Ford's Rule 13(a) arguments, and if so whether Rule 13(a) applies to the claims against them. Additionally, the Court grants leave to the Plaintiffs to supplement their opposition accordingly.  Upon considering the parties' additional briefing on Rule 13(a), the Court will address whether the following arguments are to be reached: EQ's arguments that Count III must be dismissed because Plaintiffs are not intended beneficiaries under the relevant contract, that Count VIII must be dismissed because Plaintiffs' negligent misrepresentation claim fails under Rules 9(b) and 8(a), and that Plaintiffs' NJ RICO claim is barred by the statute of limitations (*see* EQ Moving Br., D.E. 47); MIG and ACI's arguments that the JSM Complaint fails to allege any factual basis on which to assert any claims against MIG or ACI, that the doctrines of laches, waiver, and estoppel preclude Plaintiffs from asserting Count IX negligence, Count X civil conspiracy and Count XI NJ RICO, that the NJ RICO count is barred by the

of others, but it is unclear to the Court which parties explicitly joined Ford's Rule 13(a) arguments, which the Court considers to be a dispositive threshold issue for dismissal of claims in this case. Ford's lead argument—and the Court's focus in this Opinion—is that the Related Entities' claims in this action should have been raised as compulsory counterclaims under Rule 13(a) in the Edgewood Action. Below, the Court explains why it agrees.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

---

statute of limitations, and that Plaintiffs failed to name Edgewood as an indispensable party in the present action under Rule 19 (*see* MIG and ACI Moving Br., D.E. 48); Golder's arguments that the NJ RICO claims were filed well outside the four year limitations period, that all claims are barred by laches, that the JSM Complaint fails under Rule 19 (*see* Golder Moving Br., D.E. 50); and Arcadis's arguments that the Related Entities failed to state a claim under CERLA (Count VI) and the NJ Spill Act (Count VII), and that the NJ RICO count is time barred. (*See* Arcadis Moving Br., D.E. 51). The Court notes that it found persuasive—but, again, does not explicitly reach—Defendants' argument that Plaintiffs' NJ RICO claims are barred by the four-year statute of limitations, because the Related Entities waited five-and-a-half years to bring the claims. (*See, e.g.*, Ford's Moving Br. at 28-29).

**B.      Rule 13(a)**

Rule 13(a) provides: "(1) In General.  A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  A party's failure to raise compulsory counterclaims in the first action bars the party from instituting a second action in which that counterclaim is the basis of the complaint.  *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974 ("A counterclaim which is compulsory but is not brought is thereafter barred."); *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) ("[Fed. R. Civ. P. 13 was] particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.").  The policy underlying Rule 13 is "judicial economy."  *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (citing Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.")).  The Supreme Court has stated that the purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962); *see also Alden v. Packel*, 524 F.2d 38, 51 (3d Cir. 1975) (describing "the fundamental policy underlying Rule 13" as "the expeditious resolution of all controversies growing out of the same transaction or occurrence or between the same parties in a single suit").

To determine if Rule 13(a) applies, the Court analyzes: whether the claim in question is one that "at the time of its service—the pleader has against an opposing party"; and whether the claim "arises out of the transaction or occurrence that is the subject matter of the opposing

party's claim." Fed. R. Civ. P. 13(a). Parties are "opposing" when claims are asserted against them, for example, when parties are named in the complaint. Additionally, "Rule 13(a) is not limited in its application to original parties." *Transamerica*, 292 F.3d at 391 (quotation omitted). Instead, a "party may be so closely identified with a named party as to qualify as an 'opposing party' under Rule 13(a)." *Id.* at 390. For example, where a counterclaimant is on notice of an unnamed party's interest in the litigation, is familiar with its identity, and where the named and unnamed parties bear a close relationship, the parties are "opposing parties" for purposes of Rule 13(a). *Id.* at 392. When the closely related party has notice of its potential compulsory counterclaims, it is required to assert them or lose them. *See id.* The Third Circuit has adopted this broad interpretation to comport with judicial efficiency. *See id.* at 392 ("[C]ourts interpreted 'opposing party' broadly for essentially the same reasons that courts have interpreted 'transaction or occurrence' liberally—to give effect to the policy rationale of judicial economy underlying Rule 13.").

With respect to the "transaction or occurrence" requirement, "a claim need only 'bear[] a logical relationship to' the subject matter of the complaint" to be part of the same "transaction or occurrence." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 n.9 (3d Cir. 2011) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)). "Such a logical relationship exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.* (quotation omitted). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 389-90. "In short, the objective of Rule 13(a) is to promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose." *Id.*

III.    **DISCUSSION**

A.    **Arguments by the Parties**

Generally, Ford argues that the Court should dismiss all claims against them in the JSM Complaint because the claims in the JSM Complaint were compulsory counterclaims under Rule 13(a) that should have been asserted in the Edgewood Action in 2008 but were not.[4]   (Ford Moving Br. at 9-10).  With respect to whether the Related Entities are "opposing parties" in the Edgewood Action, Ford argues as follows.  The Related Entities are opposing parties in the Edgewood Action because, in their First and Second Amended Complaints, Ford defined "Edgewood" as including each of the Related Entities individually.  Ford then asserted claims against "Edgewood," thereby asserting claims against Edgewood *and* each of the Related Entities.  (*Id.* at 10; Ford Reply Br. at 15).  With respect to whether the claims against "Edgewood" in the Edgewood Action are related to the same "transaction or occurrence" as the claims in this action, Ford argues that all of the claims in both actions arise out of "Edgewood's procurement of RCA from the Edison Plant and unlawful use of that RCA at Plaintiffs' properties."  (Ford Moving Br. at 11).  Ford argues that despite the Related Entities' opposing party status in the Edgewood Action, the Related Entities twice failed to assert compulsory counterclaims: first, when they answered the First Amended Complaint on November 3, 2008, and second, when they answered the Second Amended Complaint on July 27, 2009.  Therefore, Ford concludes, the Related Entities are precluded from asserting those claims in the present action.

---

[4] Ford also argues that the entire complaint should be dismissed under the entire controversy doctrine, which "requires the joinder of all claims against a party arising from a single controversy."  (Ford Moving Br. at 11 (citing N.J. Ct. Rule 4:30A)).  The Court does not reach the entire controversy doctrine because it finds that Rule 13(a) applies.

In their consolidated opposition brief, the Related Entities generally argue that the Related Entities have never been "opposing parties" in the Edgewood Action, and therefore Rule 13(a) does not apply and the claims in the present action should survive dismissal.  (Related Entities Opp. Br. at 62).  Specifically, the Related Entities argue that they were not opposing parties on March 17, 2006 when Ford filed its initial complaint in the Edgewood action, so they were not permitted to bring counterclaims in the first answer on December 7, 2006.  (*Id.*).  The Related Entities then argue that Ford sought leave to file amended claims against only Edgewood (and not the Related Entities), and that on June 9, 2008, "Ford's First Amended Complaint . . . specifies that it asserts claims against Edgewood alone," because "[a]lthough Ford's First Amended Complaint . . . identifies the individual Plaintiffs by name . . . it does *not* identify them as 'Defendants' . . . [and] [t]hat rubric was reserved for Edgewood Properties, Inc." (*Id.* at 63).[5]  The Related Entities continue, "[t]he same analysis applies to Ford's Second Amended Complaint against Edgewood," and therefore "there was no requirement for Edgewood (let alone the Plaintiff[] [Related Entities]) to challenge such non-existent allegations, and Edgewood alone served an Answer . . . ."  (*Id.* at 64).  The Related Entities conclude that "[b]ecause the Plaintiff[] [Related Entities] filed no responsive pleading to either Ford's First Amended Complaint . . . or Ford's Second Amended Complaint in the Edgewood Action, the Plaintiffs' failure to plead an alleged compulsory counterclaim in that case 'does not bar' their claims in the instant suit."  (*Id.* (quoting *United States v. Snider*, 779 F.2d 1151 (6th Cir. 1985), *MRW, Inc. v. Big-O Tires, LLC*, 2008 U.S. Dist. LEXIS 101902 (E.D. Cal. Nov. 25, 2008))).

---

[5] The Court notes here—but explains more completely below—that this argument rests on an incorrect reading of the First and Second Amended Complaints, in which Ford defined "Edgewood" as including the Related Entities, then alleged claims against defendant "Edgewood," which explicitly included the Related Entities.  (*See supra* Part I.A-B) (setting forth the facts as alleged in Ford's First and Second Amended Complaints).

On reply, Ford reiterates that it asserted claims against the Related Entities in the First and Second Amended Complaints, and that the Related Entities failed to raise counterclaims in both of their Answers, thereby precluding the Related Entities from raising the same claims in the present action.  (Ford Reply Br. at 15).  "All of the Plaintiffs filed responsive pleadings in the Edgewood Action and each denied the allegations in Ford's First and Second Amended Complaints . . . . In so answering, Plaintiffs were required to, but did not file compulsory counterclaims."  (*Id.*).

**B.      Rule 13(a) Analysis Part I: Opposing Party**

The Court finds that Ford was an opposing party to the Related Entities in the Edgewood Action for purposes of Rule 13 at the time when the First and Second Answers to Ford's First and Second Amended Complaints were served.  Ford and the Related Entities were, in fact, opposing parties because Ford explicitly asserted claims against the Related Entities in the First and Second Amended Complaints, and the Related Entities answered those claims by explicitly denying them in the Answers to Ford's First and Second Amended Complaints on their own behalf.[6]

---

[6] Even assuming *arguendo* that claims had been asserted only against Edgewood (and not the Related Entities), and that the Related Entities had not explicitly denied the claims on two separate occasions, the parties' close logical relationship could have provided them with sufficient notice of the claims under the Third Circuit's broad definition of the term in *Transamerica*.  *See* 292 F.3d 392-93.  The Court notes, at the outset, that it stops short of deciding whether *Transamerica* applies to the relationships among parties in this action because the parties do not squarely raise the issue in their briefs.  Oddly, the Related Entities raise *Transamerica* in their opposition brief in a footnote, arguing as follows:

> Under certain circumstances, such as Ford's successful averment that the Plaintiffs were the "alter egos" of Edgewood, Rule 13(a) would arguably have required the Plaintiffs to assert their claims as counterclaims to Ford's First Amended Complaint [Corrected].  *See Transamerica* [],292 F.2d [at] 390-391.  In this case, however, Judge Ackerman correctly held that Ford failed to allege any basis upon which the Plaintiffs could be found to be "alter egos" of Edgewood.  (Related Entities Moving Br. at 64 n.15).

The Court doubts that *Transamerica* can be so quickly dismissed, especially considering Judge Alito's rationale that the broad definition of "opposing party" applied because of the fact that the unnamed party in the first action was "aware of the identity of interests" between the unnamed party and the plaintiffs in the first action.  *Id. at* 392.  Indeed, it was "significant" in *Transamerica* "that the insurer, IIC, was actually the party controlling the litigation in

In their opposition brief, the Related Entities assert their core argument that "[a]lthough Ford's First Amended Complaint . . . identifies the individual Plaintiffs by name . . . it does *not* identify them as 'Defendants.'"   (Related Entities Opp. Br. at 63).   The Court rejects this argument for two reasons.   First, a party becomes a defendant when the action's architect asserts claims against a party whether or not the complaint uses the word "Defendant" to describe them, and second, the allegations in the Amended Complaints directly contradict the Related Entities' argument that they were not named as defendants in the Edgewood Action.

A "defendant" is "[a] person sued in a civil proceeding or accused in a criminal proceeding."   *See Black's Law Dictionary* (9th ed. 2009).   Counsel for Plaintiffs clearly recognized this fact before Judge Salas ruled from the bench on September 17, 2010, denying the Related Entities' motion to amend in the Edgewood Action.   (*See* D.E. 359 at 78 ("I will say, Your Honor, there has been . . . suggestion that we're attempting to add new parties.   We're not adding new parties.   I want to make that perfectly clear.   These parties are in the litigation.   Ford added them to the litigation.")).   The Court agrees that the Related Entities were defendants in the Edgewood Action.

Both the First and Second Amended Complaints in the Edgewood Action clearly asserted claims against Edgewood *and* the Related Entities, who denied allegations against them, and then failed to assert any counterclaims in their Answers to Ford's First and Second Amended

---

both actions."   *Id.*   In the present case, Edgewood and each of the Related Entities "admit[ted] that they are owned by the same individuals," (Answer to Ford's First Amended Compl. ¶¶ 10-17), and that "Edgewood Properties, JSM at Applegarth, JSM at Brick, JSM at Route 70, Fulton Square Urban Renewal, JSM at Martin Blvd., Columbia Group, JSM at Tingley, and W.W.M. . . . have the same principal place of business."   (Answer to Ford's Second Amended Compl. ¶ 18).   Additionally, Judge Martini found in the Edgewood Action that Edgewood "kn[ew] full well at least of the presence of the [Related] Entities," and that "at the very least Edgewood's in-house counsel should have been aware of the corporate entities and of their rights."   (D.E. 486 (11-1278) at 1, 8).   Finally, it is difficult for the Related Entities to argue now that they would not have had notice of the relevant claims in light of counsel's own acknowledgement that the Related Entities were parties to the Edgewood Action.   (*See* D.E. 359 at 78:10-13 ("I will say, Your Honor, there has been . . . suggestion that we're attempting to add new parties.   We're not adding new parties. I want to make that perfectly clear.   These parties are in the litigation.   Ford added them to the litigation.   What we are attempting to do now . . . . [is] file[] those party's [sic] counterclaims.")).

Complaints.  As to the First Amended Complaint, Ford made clear that its claims included allegations against the Related Entities.  The June 9, 2008 First Amended Complaint defined "Edgewood" as including Columbia Group, Tingley, Route 70, Brick, Applegarth, Martin Blvd., WWM, and Fulton Square.  (First Amended Compl. ¶ 18 (alleging that "[f]or purposes of this First Amended Complaint, 'Edgewood' shall include the entities named at paragraphs 9 through 17, above," then listing Columbia Group (¶ 10), Tingley (¶ 11), Route 70 (¶ 12), Brick (¶ 13), Applegarth (¶ 14), Martin Blvd. (¶15), WWM (¶ 16), and Fulton Square (¶ 17)).  Following the survival of contribution and negligence claims against Edgewood and the Related Entities in the wake of Judge Ackerman's ruling on a motion to dismiss, (D.E. 202 (11-1278)), each Related Entity answered on its own behalf, "den[ying] all remaining allegations related to itself in this First Amended Complaint and further stat[ing] that it lack[ed] sufficient information or knowledge to form a belief as to the truth of all other allegations in this First Amended Complaint, and *therefore denies them*."   (Answer to Ford's First Amended Compl. ¶ 10 (Columbia Group), ¶ 11 (Tingley), ¶ 12 (Route 70), ¶ 13 (Brick), ¶ 14 (Applegarth), ¶ 15 (Martin Blvd.), ¶ 16 (WWM), ¶ 17 (Fulton Square)) (emphasis added).  Therefore, Ford asserted claims against the Related Entities in its First Amended Complaint, and the Related Entities answered when each of them individually denied all allegations on its own behalf.

As to the July 10, 2009 Second Amended Complaint, Ford again made clear, "[f]or purposes of this Second Amended Complaint, 'Edgewood' shall include the entities named at paragraphs 8 through 17."  (Second Amended Compl. ¶ 19 (including Columbia (¶ 9), Tingley (¶ 10), Route 70 (¶ 11), Brick (¶ 12), Applegarth (¶ 13), Martin Blvd. (¶ 14), WWM (¶ 15), Fulton Square (¶ 16)).  On July 10, 2009, each of the Related Entities again answered on its own behalf, listing its specific admissions and denials.  (*See* Answer to Ford's Second Amended

Compl. ¶¶ 9-16).  These admissions and denials clearly constituted answers under Rule 8(b).  *See* Fed. R. Civ. P. 8(b) ("Defenses; Admissions and Denials.  (1) In General.  In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it *by an opposing party*.") (emphasis added).  Therefore, based on the claims asserted against them in the Edgewood Action, and their explicit denial of allegations in their Answers to Ford's First and Second Amended Complaints, the Related Entities cannot credibly argue that Ford was not an opposing party in the Edgewood Action.[7]

Despite their denial of specific allegations in their Answers to Ford's First and Second Amended Complaints, the Related Entities argue that they never answered, and therefore Rule 13(a) does not apply and the Related Entities are free to bring claims in an entirely new action. (*See* Related Entities Opp. Br. at 65 ("[T]he bar to future suit does not arise if the defendant in the prior action did not file a responsive pleading. . . . [and] [b]ecause the Plaintiffs filed no responsive pleading to either Ford's First Amended Complaint . . . or Ford's Second Amended

---

[7] Oddly, the Related Entities attempt to rest their Rule 13(a) argument on a premise—and, indeed, two specific decisions—that the Third Circuit has explicitly rejected.  At the outset of their Rule 13(a) argument, the Related Entities argue, "[i]n the Edgewood Action, Ford's original Complaint . . . only asserted claims against 'Defendant Edgewood Properties, Inc. . . . . [t]hus, because the Plaintiffs were not 'opposing parties' to Ford, they were not eligible to bring counterclaims against Ford and they were not within the scope of Rule 13."  (Related Entities Opp. Br. at 62).  In support of this argument, the Related Entities cite to a 1964 decision from the Tenth Circuit and a 1984 decision from the Southern District of Ohio for their narrow definitions limiting "opposing party" to parties against whom claims are alleged in the original complaint.  (*See id.* (citing, *e.g.*, *First Nat'l Bank v. Johnson Cnty. Nat'l. Bank & Trust Co.*, 331 F.2d 325, 328 (10th Cir. 1964); *Cincinnati Milacron Industries, Inc. v. Aqua Dyne, Inc.*, 592 F. Supp. 1113 (S.D. Ohio 1984)).  In *Transamerica*, the Third Circuit rejected not only this narrow interpretation of "opposing party" but also these two cases specifically:

> A narrow interpretation of "opposing party" would lead us to read it strictly as a named party who "asserts a claim against the prospective counter-claimant in the first instance."  *First Nat'l. Bank v. Johnson Cnty. Nat'l. Bank & Trust Co.*, 331 F.2d 325, 328 (10th Cir. 1964); *see also Cincinnati Milacron Industries, Inc. v. Aqua Dyne, Inc.*, 592 F. Supp. 1113 (S.D. Ohio 1984) (finding that Rule 13(a) did not permit the filing of a compulsory counterclaim against Cincinnati Milacron Industries, Inc. because it was not a party to the litigation against Milacron Marketing Company, a separate corporate entity from Cincinnati Milacron Industries, Inc.).

*Transamerica*, 292 F.3d at 390.  The Court therefore rejects the Related Entities' argument and their reliance on these decisions.

Complaint in the Edgewood Action, the Plaintiffs' failure to plead an alleged compulsory counterclaim in that case 'does not bar' their claims in the instant suit.")).  In support of their argument, the Related Entities cite two out-of-Circuit decisions.  (*See id.* (citing *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir. 1985) and *MRW, Inc. v. Big-O Tires, LLC*, No. 08-1732, 2008 WL 5113782 (E.D. Cal. Nov. 26, 2008))).  The Court finds neither case persuasive because neither is on point.

In *Snider*, the Sixth Circuit found that Rule 13(a) "only requires a compulsory counterclaim if the party who desires to assert a claim has served a pleading."  *Snider*, 779 F.2d at 1157.  In that case, a doctor suspected of accepting illegal Medicare reimbursements sued the government seeking declaratory judgment that the government was not entitled to stop future reimbursements to the doctor, which would put him out of business.  Both parties agreed to an expedited timeline and the Court advanced hearing on the physician's preliminary injunction and consolidated it with trial on the merits.  *Id.* at 1156.  The district court set an expedited briefing schedule and the government filed a motion to dismiss a week later without asserting any counterclaims against the doctor for past payments.  Later, in a separate action, the government filed these claims for past payment, and the doctor moved for dismissal under Rule 13(a).  The Sixth Circuit affirmed the district court's decision that the second case should not have been dismissed because the government's motion to dismiss the first action did not constitute a pleading under Rule 13(a), reasoning that "proof in the second case consisted of voluminous records of claims and payments, none of which was necessary for determination of the injunction issue."  *Id.*  Because of the expedited nature of the preliminary injunction in the first case, the government never filed—nor should it have been required to file—a proper answer, and therefore its claims for past payment in the second case properly survived.  *Id.* at 1157 ("[W]here

the rules do not require a pleading either because of pending motions or because the usual process by which the issues are formed has been displaced by the accelerated process permitted under Rule 65, the compulsory counterclaim requirement of Rule 13(a) is inapplicable.").

The present case is wholly distinguishable for three reasons. First, the Edgewood action was not an expedited preliminary injunction set for trial in a matter of months. Instead, the Edgewood Action was filed in 2006 and continues now. Second, unlike in *Snider*, the Related Entities joined in a responsive pleading to the First and Second Amended Complaints in the Edgewood Action when they denied allegations in the First and Second Answers. Third, proof in the present case would consist of much of the same discovery materials as in the Edgewood Action.[8] Therefore, the Court finds that the non-pleading rationale undergirding *Snider* and similar decisions does not apply to cases where, as here, defendants in the first action filed a responsive pleading in which they could have—but chose not to—file counterclaims.[9]

Additionally, for two independent reasons the Court rejects the Related Entities' implicit argument that their denials of allegations in the First and Second Amended Complaints were not answers because the Answers themselves were Edgewood's pleadings alone. First, this

---

[8] The Court clarifies that the fact that the present case and the Edgewood Action would implicate similar discovery materials does not mean that the Parties in the present case would not have to *review* the entirety of these materials a second time to defend against the Related Entities' claims. Additionally, re-hashing the same discovery disputes with which the Court has wrestled for the past five years in an entirely new action would severely undercut Rule 13's underlying rationale of judicial economy.

[9] The Court finds the Related Entities' reliance on the Central District of California's decision in *MRW, Inc. v. Big-O Tires, LLC* to be similarly misplaced for two reasons. First, in *MRW*, the court found that "although the past and present claims share the same players, the operative facts underlying the particular claims differ. For the most part, the past and present claims concern conduct that occurred at different times, separated by the adoption of the franchise agreement." *MRW*, 2008 WL 5113782, at *7. Here, in contrast, as discussed below, the Edgewood action and the present action arise from the same transaction or occurrence. Second, in *MRW*, defendants in the first action never filed a responsive pleading, and as discussed, the Related Entities have. *See id.* at *10 ("Here, both of the parties' prior suits concluded without a responsive pleading. Defendant and plaintiff MRW settled the first case by stipulated judgment prior to the time when plaintiff would have been required to file an answer. . . . Similarly, in the second lawsuit, MRW successfully filed for a motion to dismiss Big-O Tires claims and was never required to serve an answer."). The Court is also aware of decisions in this District that stand for a similarly distinguishable proposition. *See, e.g., E.H. Yachts, LLC v. B&D Boatworks, Inc.*, No. 06-164, 2006 WL 3068560, at *3 (D.N.J Oct. 27, 2006) (finding that filing a motion to dismiss does not waive compulsory counterclaims).

argument is belied by the Federal Rules and fundamental definitions related to civil procedure. *See* Fed. R. Civ. P. 7(a) (defining "pleadings" as including "(2) an answer to a complaint"); *Black's Law Dictionary* (9th ed. 2009) (defining "pleading" as "[a] formal document in which a party to a legal proceeding (esp[ecially] a civil lawsuit) sets forth *or responds to* allegations, *claims*, denials, or defenses") (emphasis added); *id.* (defining "answer" as "[a] defendant's first pleading that addresses the merits of the case, *usu[ally] by denying the plaintiff's allegations*") (emphasis added).

Second, to permit a party to be considered a "party" to the action for purposes of denying allegations, but not for purposes of Rule 13(a) would be to allow that party to follow the Federal Rules only when it suits their strategy.  For example, accepting the Related Entities' argument that they were never parties to the Edgewood Action because they only denied allegations against them in *Edgewood's* answer would give the Related Entities all of the benefits of pleading practice with none of the burdens.  The parties could remain passive participants in one action, reserving the right to become active participants in a second action any time in the future. All the while, the Court and the other parties would be left to guess when additional discovery would be requested to support additional defenses in an entirely separate, yet closely and logically related action.  The Court's facilitation of such a strategy would undercut the guiding principles of the Federal Rules generally and of Rule 13(a) specifically.  *See S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (finding that the purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters"); *Transamerica*, 292 F.3d at 393 ("[A]djudicating these issues at once is consistent with the approach to judicial economy underlying the Federal Rules of Civil Procedure."); *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978) (explaining that

Rule 13(a) promotes judicial economy because allowing separate trials on related claims would "involve a substantial duplication of effort and time by the parties and the courts").[10]

Accordingly, the Court finds that Ford and the Related Entities were "opposing parties" in the Edgewood Action, and that the Related Entities answered on their own behalf by denying allegations without asserting counterclaims.[11]

### C.      Rule 13(a) Analysis Part II: Same Transaction or Occurrence

There is no question that the claims in the Edgewood Action and the present action arise out of the same transaction or occurrence, because both actions arise out of Edgewood's procurement of RCA from the Edison Plant and unlawful use of that RCA at the Seven Properties owned by the Related Entities.   Rule 13(a) does not even require such a close similarity as the one in the present case.   *See Transamerica*, 292 F.3d at 390 ("In short, the objective of Rule 13(a) is to promote judicial economy, so the term 'transaction or occurrence' is

---

[10] To the extent the Related Entities argue that new materials discovered in the course of the Edgewood Action warrant an entirely new case almost five years later, the Court notes that Judge Martini already foreclosed a similar argument in his affirmance of the denial of the Related Entities' motion to amend their claims in the Edgewood Action.  (D.E. 486 (11-1278) at 6-7 (affirming Judge Salas's finding that "Edgewood has failed to provide any detail as to what it discovered in the course of the recent depositions and written discovery that would warrant this Court[] allowing the proposed amendments at this late stage in the litigation")).  Indeed, permitting the Related Entities to institute an entirely new action based as the same transaction or occurrence as the one in the action where they were denied leave to amend would eviscerate the implications of Rule 13(a).

[11] In footnotes, the Related Entities bring additional arguments that the Court addresses briefly here.  First, the Related Entities argue, "there is no entry in the docket for the Edgewood Action showing that Ford ever served its First Amended Complaint . . . let alone summonses, upon the individual Plaintiffs."  (Related Entities Opp. Br. at 63 n.63).  The Related Entities add, "there is no showing in the record that Ford ever served its Second Amended Complaint on the individual Plaintiffs.  Moreover, if Ford's assertions were correct, it is undisputed that the Answer to Ford's Second Amended Complaint was served by Edgewood only.  If Ford's Second Amended Complaint asserted legal claims against the Plaintiffs, and if the latter failed to respond to such claims, why didn't Ford seek a default judgment against them?"  (*Id.* at 64 n.16).  As to the latter point, the Court does not presume to guess why default judgment was never sought or what strategy led the Related Entities—on at least two separate occasions—to deny allegations without bringing counterclaims.  As to the former point, any affirmative defense in the Edgewood Action relating to failure of service is not properly before the Court in this action.  *See* Fed. R. Civ. P. 12(b)(5) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.  If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim.  No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.").

construed generously to further this purpose."); *see also Vukich v. Nationwide Mut. Ins. Co.*, 68 F. App'x 317, 319 (3d Cir. 2003) (affirming the district court's dismissal of the complaint in the second action based on its logical relationship to the claims in the first action because "[a] comparison of the two lawsuits quickly yields" that the breach of employment claims in the first action were logically related to the same employment contract at issue in the second action). Similarly here, the Court finds that each of the claims against Ford in the present action arise out of the same transaction or occurrence as the claims in the Edgewood Action because both sets of claims relate to contracts—and actions surrounding those contracts—regarding Edgewood's procurement of RCA.

**Count I** of the JSM Complaint (Breach of Contract) against Ford and Ford Land (¶¶ 182-190) relates to Edgewood's procurement of RCA because the contract at issue is the Edgewood Zero-Dollar Sales Agreement, the agreement under which Edgewood received crushed concrete. This document is the core document in the Edgewood Action, as it would be in this one.

**Count II** (Unjust Enrichment) against Ford and Ford Land (¶¶ 191-198) and **Count III** (Breach of Contract) against Ford, Ford Land, and EQ (¶¶ 199-208) both relate to Edgewood's procurement of RCA because the claims are based on the fact that "EQ and Ford entered into the Second Contract to provide concrete, containing specified levels of contaminants, to Edgewood." (*Id.* ¶ 346). The Second Contract is also a core document in the Edgewood Action.

**Count IV** (Fraud in the Inducement) against Ford and Ford Land (¶¶ 209-244) "aris[es] out of the crushed concrete Plaintiffs allowed to be delivered to the Seven Properties under the Edgewood Zero-Dollar Sales Agreement and/or the 'Second Contract.'" (*Id.* ¶ 209). Therefore, as in Count I, the transaction or occurrence requirement is met.

**Count V** (New Jersey Consumer Fraud Act) against Ford, Ford Land, and Golder (¶¶ 245-263) relates to Edgewood's procurement of RCA because the JSM Complaint alleges, "[i]n negotiating and contracting to provide Edgewood with residential (or unrestricted use) crushed concrete while intentionally giving Edgewood (and, foreseeably, Plaintiffs) commercial (or restricted use) and above crushed concrete, Ford, along with representatives and/or agents of MIG/A, Golder, Arcadis, and/or EQ engaged in unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts because Ford, Golder, and/or EQ knowingly misrepresented the quality of the crushed concrete." (*Id.* ¶ 247). Costs in response to contaminated RCA clearly meet the transaction or occurrence test.

**Count VI** (CERCLA Cost Recovery) against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 264-274) relates to Edgewood's procurement of RCA because the claim focuses on the allegation that "Ford, Ford Land, MIG/A, ACI, EQ, Golder and Arcadis arranged for disposal or treatment of hazardous substances, namely, PCB- and other-contaminated concrete, at the Related Entities under 42 U.S.C. § 9607(a)(3)." (*Id.* ¶ 268). The Count also focuses on the allegation that "Ford, Ford Land, MIG/A, ACI, EQ, Golder and Arcadis are jointly and severally liable for all response costs incurred by Plaintiffs" based on "the distribution of contaminated crushed concrete to Edgewood without the proper permits and approval letters." (*Id.* ¶ 273-74).

**Count VII** (New Jersey Spill Act) against MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 275-286) relates to Edgewood's procurement of RCA because under this claim, the Related Entities seek contribution related to the parties' alleged failure under the New Jersey Spill Act to, among other things, "properly and adequately test the concrete . . . to notify . . . authorities that

24

the concrete was contaminated [and] . . . to request the proper permits to transfer the concrete to Edgewood." (*Id.* ¶ 284).[12]

  **Count VIII** (Negligent Misrepresentation) against Ford, Ford Land, EQ, and Golder (¶¶ 287-306) relates to Edgewood's procurement of RCA because the Defendants' allegedly "recklessly and/or negligently disregarded" their duty to "Edgewood and Plaintiffs, as recipients and users of the concrete . . . to disclose hidden defects in the crushed concrete of which Ford, EQ and/or Golder was or should have been aware." (*Id.* ¶ 289).

  **Count IX** (Negligence) against Ford, Ford Land, MIG/A, ACI, EQ, Golder and Arcadis (¶¶ 307-310) relates to Edgewood's procurement of RCA because the claim relates to "loading and disposal of the concrete in a reasonable and safe manner." (*Id.* ¶ 308).

  **Count X** (Civil Conspiracy) against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 311-318) relates to the subject matter of Ford's claims in the Edgewood Action because the core of this claim is that "Ford, MIG/A, Golder, Arcadis and EQ conspired to commit a fraud on Plaintiffs, Edgewood and others by entering into a conspiratorial agreement to induce Plaintiffs, Edgewood and others to accept crushed concrete by knowingly misrepresenting to Edgewood, and indirectly misrepresenting to Plaintiffs, the quality of the concrete." (*Id.* ¶ 312).

  **Count XI** (NJ RICO) against Ford, Ford Land, MIG/A, ACI, EQ, Golder, and Arcadis (¶¶ 319-382) similarly relates to the claims in the Edgewood Action because the allegation is based on the fact that "Ford, MIG/A, Golder, Arcadis and EQ formed an enterprise with the intent of distributing concrete that they knew was contaminated in violation of environmental regulations." (*Id.* ¶ 320).

---

[12] The Court notes that it reserves judgment on whether this claim is dismissed in light of the fact that it is not alleged against Ford

All of the claims in the present action against Ford bear the requisite logical relationship to claims in the Edgewood Action that should have been raised by the Related Entities, but were not.  Each claim against Ford in this action implicates the same evidence related to the contracts and actions at issue in the Edgewood Action.  *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961) ("[A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts."); *see also Banks v. Moore*, 214 F. App'x 164, 165-66 (3d Cir. 2007) (finding that plaintiff "was required to raise . . . compulsory counterclaims under Rule 13" because the first and second actions both related to an "agreement for the manufacture, distribution, and retail promotion of a music CD"); *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 430-31 (3d Cir. 2003) ("[Plaintiff's] potential breach of fiduciary duty claims against MetLife and GM were compulsory counterclaims that should have been asserted in the [previous] interpleader action.  Brennan's contention that MetLife and/or GM misplaced, mishandled, or lost the decedent's 1991 enrollment form clearly bears a logical relationship to the claims in that action—the existence of that form was the crucial issue in determining whether the decedent designated Brennan as the beneficiary of his optional policy."); *Vukich*, 68 F. App'x at 319 ("A comparison of the two lawsuits quickly yields the conclusion that the claims made in this suit are logically related.").

### D.    Ramifications of Failure to Raise Compulsory Counterclaims in the First Action

A party's failure to raise compulsory counterclaims in the first action bars the party from instituting a second action in which that counterclaim is the basis of the complaint.  *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974 ("A counterclaim which is compulsory but is not brought is thereafter barred."); *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60

26

(1962) ("[Fed. R. Civ. P. 13 was] particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint."); *3 Moore's Federal Practice* § 13.14[1] (3d ed. 2011) ("Generally, the timing of a counterclaim and its classification as compulsory do not become vital until a second action is brought, in which the pleader attempts to raise a claim based on the same transaction or occurrence that was the basis of the first suit, and the opposing party moves to dismiss it as barred.  While the text of Rule 13 does not explicitly state the prohibition, a claim that was compulsory in a prior suit is barred in a subsequent action based on the same claim.").

Ford and the Related Entities were opposing parties in the Edgewood Action by virtue of the claims alleged against the Related Entities in the First and Second Amended Complaints as well as the Related Entities' subsequent denials.  All of Plaintiffs' claims against Ford in the present case arise out of the same transaction or occurrence that is the subject matter of the claims in the Edgewood Action.  Because Plaintiffs never brought their compulsory counterclaims in a timely manner in the Edgewood Action, Plaintiffs are barred from circumventing previous orders by the Court and bringing those same claims in the present action. Because it would be futile to amend these claims in the current action, the Court dismisses all claims in the current complaint—as against Ford—with prejudice.  *See*, *e.g.*, *Moose Mt. Mktg., Inc. v. Alpha Int'l, Inc.*, No. 03-4035, 2005 U.S. Dist. LEXIS 37581, at *5, 7 (D.N.J. Dec. 28, 2005) (dismissing plaintiff's complaint with prejudice based on its failure to assert compulsory counterclaims in the still pending first action arising out of the same transaction or occurrence).

**IV.    CONCLUSION**

For the above reasons, the Court GRANTS Ford Motor Company and Ford Motor Land Development Corporation's motion to dismiss for failure to bring compulsory counterclaims under Rule 13(a) (D.E. 52), and dismisses the claims against these parties with prejudice.  The Court DENIES the following motions without prejudice granting leave for amended briefing per the accompanying Order: EQ Northeast Inc. (D.E. 47), MIG/Alberici, L.L.C. and Alberici Constructor Inc. (D.E. 48), Golder Associates, Inc. (D.E. 50), Arcadis U.S., Inc. (D.E. 51).


*s/Esther Salas*
**Esther Salas, U.S.D.J.**